Good morning. My name is Penelope Strong. I represent the appellant, Nadine Robinson. Your Honors, the first point that I would like to argue concerns the validity of the search warrant in this case and, of course, whether or not the court erred in terms of its decision that the search warrant finally was not an anticipatory warrant but also was independently supported by probable cause. Is this the search warrant for the residence? This is just the search warrant, yes, Your Honor, for the residence. And was there a separate search warrant for the package initially? There was. I submit to you that you can dispose of this case appropriately on a very narrow factual ground based on the rulings of two cases in this circuit, U.S. v. Hotal and U.S. v. Vesichiro. As you know or may know, Hotal was an anticipatory warrant case where the affidavit, not the warrant, contained the triggering condition that, of course, is required for anticipatory warrants under prior rulings of this circuit. What occurred there was that the affidavit also said that it was attached, incorporated by reference to the warrant. However, the officers did not bring that affidavit with them to the site of the search. And in a fairly lengthy opinion, Judge Reinhart reviewed anticipatory warrant doctrines both in this circuit and in the First Circuit and decided to adopt the view of the First Circuit that it needed to be presented or attached in order to have a valid anticipatory warrant. Let me ask you about that. Here the affidavit doesn't accompany it. Is that right? That's correct. And so does that argument go to the sufficient particularity issue? And was that actually pled here? Well, I argued particularity by citing not only in my brief to this Court, but in the lower court, I believe, the fundamental case of U.S. v. McGrew. I think particularity does not 100 percent control this matter, but it is the underlying premise, because both in Hothall and McGrew, this Court has said that the particularity requirement as we know it, whether we're talking about the place to be searched or the type of search, here we have an anticipatory warrant with a condition to be fulfilled that then creates probable cause in the very near future, is a fundamental premise of Fourth Amendment jurisprudence that not only limits the discretion of the officers and provides guidance to them, but has the secondary purpose of giving notice to the individuals whose home or residence or person is being searched. Let me just get it straight to make sure I understand your argument, is that you're not really claiming particularity as a standalone, but in effect as a predicate or part of the anticipatory warrant argument? That's correct. I'm claiming it as part of the underlying rationale. At some point in your argument, could you please address why we need to look at this warrant in your view as an anticipatory warrant rather than just there was probable cause to search apart from the package? I can understand if the police set someone up like in a sting, they had no evidence of any drugs on the premises other than some package they were trying to get someone to buy, they'd have to make delivery and that would be a conditioned precedent to the probable cause. But here, why wouldn't it be enough that something was addressed in kind of like a drug dealer format and the package was mailed in a way drug dealers do it from a different zip code and then the dog alerted and they found marijuana in the package and someone in the house had a record of a drug conviction? But why wouldn't we consider that there actually were drugs in the package? Was this warrant sequential or did they get them at the same time? I believe that it was sequential, Your Honor. And if I can address that point, which is critical. First of all, I'd like to point out one important fact. This warrant never specified that, quote, unquote, eager the drug dog and Officer Steve Furstein found marijuana in that package. It simply said that there was a general alert. The warrant or the affidavit? The affidavit, excuse me. And that is why I believe the government's alternative argument in that regard is flawed. If you look at the totality of the search together with the warrant and the affidavit, it's clear it is an anticipatory warrant, even though it is not designated as such, because at the end of the warrant application, Detective Evans specifies that they're going to do a controlled delivery, and they don't break that down further. I think that's a problem, but I haven't argued it here. And they're going to allow the period of approximately 15 minutes for the person to open it and examine the contents. That, I submit to you, is most definitely an anticipatory warrant, because it's a condition for the search warrant to be carried out. And the paragraph after that paragraph on page 2 of the, excuse me, 3 of the warrant application indicates, therefore, that the applicant requests that the search warrant be issued authorizing the search of the premises in the matter provided by law. And I think that references this. And I believe, frankly, with no disrespect intended to the USA, that their argument is disingenuous to now say this was not an anticipatory warrant. We know there are special controls on anticipatory warrants because of the potential for abuse. Say that somebody just mailed this package to set someone up. That's the reason for the controlled delivery on premises, whether it's inside or outside of the home, so that the person who's there actually receives it and it's in hand. Is it the fact that the government, by preparing their affidavit or the search warrant, went through the preamble that the package was alerted at another location, and they told them about the package, the dog alerted, et cetera, that it was suspicious, package, whatever, but the final paragraph indicates that there would be a controlled delivery. You're saying once they put that in there, they are now locked in the condition precedence. I have. And that is borne out, of course, by the fact that the testimony at the suppression hearing, they observed the condition precedent before they executed the search warrant. So to now say that they had probable cause independently, I think, is a deeply flawed argument. Furthermore, with regard to that argument. Well, let's – I wanted to follow up on that. Let's pretend like we – that that last paragraph was not in there. Let's take it out. Okay. What is your comment on whether the rest of the affidavit would show probable cause? Forget about the fact that they said they were going to deliver it. Absolutely not. First of all, it doesn't even say that marijuana, an illegal drug, was definitely located in the package that they nabbed. Secondly, it says two prior packages were delivered to the name Robinson. It doesn't say anything about them being suspicious, having the odd addresses, smelling of a masking agent. They could just be normal FedEx express mail packages. Thirdly, with regard to the criminal history of Mr. Robinson, as I think most people experienced in drug law enforcement know, the fact that you've got someone living there who has a conviction history for drugs, and this conviction history is just for simple possession. We're not talking about conspiracy or delivery of drugs or sale of drugs. It breaks down between, I believe, one or two drug convictions, one being in 1999, which I would submit is fairly recent. But the rest of it is our arrest records, and I believe that they are stale. They alone do not supply the nexus. What was the drug dealing conviction for? It was not for dealing. It was just possession. It does. It says in May 1999, he was convicted in Billings, Montana, on a charge of criminal possession of dangerous drugs. It doesn't even tell us, Your Honor, if it's a felony or a misdemeanor. And then I believe there was one in California. Basically, in California, they're just arrests for various drug crimes, and those start in the 70s and continue up through the early 90s. Those are stale. That does not provide the tie to the home. Therefore, we allow controlled deliveries, whether we're using an informant or somebody posing as or here it actually was the mailman because my client was in the U.S. Postal Service, so they used a different individual. That's why we have the doctrine of anticipatory warrants. The government cannot sidestep it. The Court committed a serious error when it, quote, unquote, redid its opinion after our motion for reconsideration in light of the Vesicuro case. There's a fact that's been bouncing around in my mind while we've been talking, and unfortunately, I don't know if I read it in a case or whether it's the actual facts of this case. Is there a fact in this case that the package was actually opened in front of the magistrate? It was opened in front of the U.S. District Judge, Judge Siebel, and you may recall that at the beginning of the suppression hearing, there was a colloquy between my co-counsel, a man named Ira Eakin, and the judge, because he had, frankly, submitted a notice of the possibility of having to call the judge as a fact witness to the opening of the package, which the judge indicated occurred at his residence. Now, at what stage of the proceedings was the package opened in front of the district judge? That was after the first search warrant, which, of course, was a Federal warrant, was obtained by the postal agent. So in the Federal sense, you stop the package, you get a search warrant, and then the package is opened in front of the district judge. Well, I'm not – with no disrespect to the district court judge, I'm just saying that was the particular procedure that was employed here for whatever reason. That's what was my next question. Why did they do that? Well, what the judge indicated was – I really don't know. He indicated it was at his home, perhaps it was late in the evening hours, et cetera. Does that have any significance in our analysis? I don't believe it's of significance in your analysis. We thought it was significant in terms of what was in the package, how it was documented, because there was not good documentation of the packaging of the marijuana, how it was located within the sweaters, whether they were male or female sweaters, et cetera, et cetera. There were no photographs taken to document the packaging, and that, in terms of the trial issues, was critical. Yeah. Okay. So going back to that argument about independent probable cause, there simply is not independent probable cause, and that argument has to fail in light of all we know about Fourth Amendment jurisprudence. Even in light of the change with Illinois v. Gates and going to perhaps a lighter standard, the reasonable totality of the circumstances, it has to be that a crime is occurring or has occurred in that place. Therefore, the delivery of the package, the controlled delivery, was key. And if they didn't include in the affidavit that drugs were found in the package when it was opened, then that can't be considered? No. I believe you have to look within the four corners of the affidavit in the application. I know that that certainly is the law in the State of Montana. This was a State court warrant, and that's general principles behind review of affidavits. And, again, the package was opened in the presence of the district judge, not the State judge, who issued the search warrant. That's correct. And apparently that particular incident just kind of became a random incident. I mean, it was never put in an affidavit that we'd opened the package before. I mean, that's why I was kind of wondering. It just was kind of popped up in the record somewhere. Well, actually, and Mr. Morris' search warrant, the search warrant that he obtained from Judge Siebel and his Federal application were attached and incorporated to the State court warrant that is at issue here. And if you look at Inspector Morris' affidavit, he doesn't even say that marijuana was found in that package. It seems like actually there's no evidence of it being found. Is that right? I mean, in terms of in the documentation. That's correct. We have it. We sort of know it, but there's no record evidence of it. That's correct. In these warrants. It is not in these two warrants. That's certainly been a confusing thing to try to figure out, at least from my perspective, is how the fact that we know this figures in or doesn't figure in to our analysis. And you're suggesting that this whole procedure kind of falls by the wayside and that it doesn't really figure into our analysis. Would you go back to the documents? By this procedure, you mean whether the marijuana was included or not? Right. No, I think it figures into it most definitely. I think it's one of what I would characterize as three major factors for no probable cause for this warrant, most definitely. The factor being that they didn't include, you mean that they did not say in the affidavit that there were drugs in the package? Yes. It was the inverse of what I was saying. It's the absence of any evidence. Right. Does figure in. But the fact that we know that it was marijuana just is not really part of the record. Let me make myself clear. I'm not saying even if it said that, that the warrant would be sufficient. Right. But it didn't say that, so we don't have to try to figure that out. That's right. Well, and then the confusion of the last paragraph that says we will make a controlled delivery, they could be delivering balloons for all I know. I mean, because they say that the house has got these the package is suspicious, the people who live in the house are suspicious, and we're making a controlled delivery. So you have to make, you're saying that's not enough to make probable cause because we can't make the connection. And you're saying also if they would have said, if I get your argument right, if they said, by the way, we opened this package and took a sample before and we've now reclosed it, we're going to make a controlled delivery. We know that marijuana is going to be delivered into the house. Therefore, this is obviously with all the boilerplate. You're saying that still wouldn't be enough. Right. And keep in mind also, they're saying, they do say a controlled delivery of, quote, unquote, the parcel. It's not specifically referenced as the parcel, the express mail parcel. The other thing is this package was addressed generically to the Robinson. There's typically when you see search of a home, you see some verification of residence, that the person is leasing it. There's no verification for either Hubert or Nadine Robinson in terms of whether they lived there or not. That would present a tie to the residence. So then if we go forward to what Vesicuro, if I'm pronouncing that correctly, tells us all about anticipatory warrants. The Vesicuro case was a case where this circuit had, again, an anticipatory warrant with a controlled delivery. And, again, we have the warrant not specifying the conditions for the anticipatory warrant for the controlled delivery, but they are included in the sworn application. That was a Washington State court warrant, a State court warrant as we have here. And the agents all testified that it was they took the sworn application with them to the site of the search. They were all briefed with the sworn application. So this Court is finding then that that is a sufficient warrant because of the inclusion and taking of the warrant to the site and the use of it. We don't have that situation in this particular case because the evidence is uncontroverted at the suppression hearing that the sworn application never accompanied any of the officers. There's testimony that they put the warrant in front of my client as she was handcuffed, under arrest and seated at the kitchen table. But on cross-examination, I think virtually all of the agents indicated it was not present. I would also point out that the detective who prepared and swore out this application did not testify at the suppression hearing, so the government did not provide any testimony from him with regard to what he did in terms of his involvement in the search. Bottom. Do you want to save some rebuttal time? I will. Thank you. Good morning, Your Honors. May it please the Court. Tom Gannon for the United States. I'd first like to thank the Court for changing the schedule just to accommodate some travel problems. I appreciate that. We're always going the other way, so we understand the issue. I understand. Now, as to let me address, start at the end of Ms. Strong's argument, maybe work back. The fact that there were, I must say I was curious as I read the Detective Evans affidavit why there was no mention of the marijuana found in the package. And this, I guess, is speculation on my part, but I think it explains it. I think that what happened is that you had the Federal, the Postal Inspector, Mr. Morris, coordinating with Detective Evans, and you had a kind of a parallel track. As Morris was working toward the Federal warrant and an order justifying the opening of the package, Evans was at the same time working on the State side putting together an affidavit that incorporated Morris's affidavit. And what happened, I think, and this is just, I think this is an inference, that the package had not been opened by the time that Evans had finalized his affidavit. And so. Okay. Let's assume that's true. Right. So good people make mistakes sometimes. But doesn't the law tell us that in assessing probable cause, we have to look at what information went to the State magistrate or judge with the affidavit? Absolutely. We can't consider the fact that there was marijuana in the package if that wasn't presented, I guess. That's correct. And that's what, and there's no mention of marijuana. Seems like a rather startling error for the government to make. Well, I'm not sure it's an error, Your Honor. I think what we, you know, if you work your way through the two warrant affidavits, Inspector Morris's in the first instance and then Detective Evans, I think what you have is you have, first of all, you have probable cause to open the package. That's the federal warrant. Right. You got that. Okay. Well, if you have that, then I think what you have after that is probable cause plus. To search the residence. But the package is different than the home. No. That's true. If they said we opened the package and there were drugs in it, then they've got, well, there's a package addressed to this house. It's addressed in the way drug people, you know, address packages and mailed from a different zip code. Absolutely correct. All of that is correct. We got all that and a dog alerted to it. Yes. And there were drugs in it. And someone in the house has some drug convictions. We think there's a fair probability that we're going to find drugs there that we're dealing with a drug dealer. But without the fact that there was marijuana in the package, it's much more speculative. It's certainly a weaker case. I just can't understand why the government didn't put that in the affidavit. I tried. I mean, the best, as best I can figure out, the affidavit was prepared by the Montana detective before the package was opened. And, therefore, they had suspicions that justified the opening of the package, probable cause to open the package, and then discovered the marijuana. And, meanwhile, perhaps this affidavit had already been presented to the state court judge. What it comes down to this, though, Your Honor, I think is that it's what you're – and you used the phrase, the magic words from Illinois against Gates, a fair probability. We're not dealing in certainties here. We're not dealing in proof beyond a reasonable doubt. What we're looking for, we're looking for proof of a crime, contraband or evidence of a crime. And we're looking for a fair probability that the evidence of the contraband exists at a particular place. And that's what we have. In that regard, look at the Weber case where it's similar. I mean, the person has ordered pornographic materials in a government sting operation, but then in Weber we say, well, but that's not enough, because we don't really know that he's going to have the pornography at his house beyond this controlled sting situation, and, therefore, no probable cause. Isn't this really a parallel situation? No, I don't think so. I think when I used the phrase probable cause plus a moment or two ago, what I was talking about is that we have Hubert Robinson in the picture here, and what we have is we have one 1999 drug conviction for criminal possession, but we also have eight other arrests for drug offenses of one sort or another. Now, they're only described as arrests, and I don't know whether convictions resulted from those arrests or not, but I think when you add that to the suspicious nature of the package, including this drug dogs alert, and another important factor is the experience of the police officers, which is detailed. You know, Detective Evans goes on for two-thirds of a page, single-spaced, beginning with 28 years of police experience, and then his training, the various workshops and training sessions that he's attended, and his participation in numerous drug arrests, and his conclusion, which I think is unassailable, that, you know, people who use drugs or sell drugs are likely to have drugs or drug paraphernalia or drug records or all sorts of things that are incident to trafficking in drugs at their homes. And so that's the basis for this conclusion. So that's why I say if you have – and it's – the defendant, the appellant here, hasn't contested the probable cause for the package. Well, you have more than probable cause for the package when you get to the resident. We're back to where we were before. Yes? Here's the problem I'm having. The probable cause to open the package from the law enforcement experience and the way it's addressed and so on, and the dog alert, it's less intrusive to open a package to see what's in it than it is to go into somebody's home. And, you know, it doesn't necessarily follow that if you have a cause to open the package, you've got a cause to go into the home. Well – But if you said what was in – you know, whatever doubts there are about the package, once it's opened, they're resolved if that had been included. It's just – it's troubling, you know, and I – it's – You didn't – you just have to deal with the deck they gave you. We recognize that. These are the cards I'm – Yeah, you weren't right in the affidavit. These are the cards you dealt. It's hard for us. It's hard because the law seems to say we can only look at what was presented for the affidavit, but we know something else that wasn't presented. But that general problem happens in a lot of cases. Yeah. You know, I – The law has been pretty clear that we have to look at what's in the affidavit. Absolutely right. And I think that the district court got it right. And I think, if I might just touch on this anticipatory warrant question, if you look at pages 22 and 23 of the excerpts of record, where the district court deals in the first instance with the motion to suppress, the district court found probable cause before it even began to discuss the anticipatory warrant. And so when the judge revisited the question of whether it's anticipatory or not on the motion for reconsideration, it was merely a clarification. The finding of probable cause, and we obviously – we rest on what Judge Sybil found there on pages 22 and 23 of the excerpts. And it, I think, Mr. Robinson's criminal history figured in that finding of probable cause. The suspicious nature of the package, you know, just to begin with, because that's what led to the surveillance and the tracking of it, but the dog's alert. The dog's trained. The officers have this experience, an enormous amount of experience, Inspector Morse from the Postal Service and the detective. You put this all together, and I can't change the formulation. Fair probability. Not certainty, not absolute rock-solid certainty, but fair probability that there will be drugs or drug-related evidence at this location. Your opposing counsel, Ms. Strong, we talked to her about this, as you heard, and as I understand her position, that once you put the language in on anticipatory delivery of the controlled delivery, that you've now cast an anticipatory warrant. And because the affidavit wasn't attached, that it makes the warrant itself deficient. That's sort of set that aside over here. Yes. So if we were to look at this as an anticipatory warrant, would you agree that, first of all, the record shows, I think the government's saying, we don't know whether the affidavit was attached, the defendant said it wasn't, and so we have a situation where we have an anticipatory warrant without an affidavit attached. Would you agree, then, under our law, that then that is deficient? Yes. At that point. Yes, I would. And that's why, you know, Ms. Strong went to those cases, Rishikiru and Hotel. We think they have nothing to do with this case because it's not anticipatory. We have a set of documentation which we know, in an anticipatory warrant mode, are not going to be valid. If the law is that the triggering event has to be specified, you know, and the affidavit has to accompany it, then we lose the case. Okay. But that's not this case. And forget about the fact that in that analysis, nowhere does it say we opened the package, even though they say we're going to make a controlled delivery, and my guess is you don't make a controlled delivery of salami. You make a controlled delivery in the fact that you're talking about drugs and people who do drugs that you're going to deliver drugs. But let's take that aside. Second step, can we sever from the warrant application that last paragraph that talks about a controlled delivery and say, well, that doesn't work, but let's look at what's said in the body. And if you go through the body, if you said you show the alert of the dog, you show the suspicious package, you show the prior conviction, whatever, can you sever it and say, now, forget about whether that equals probable cause under our standards, can you sever it? Yes, I think so. I think it's... Can you sever what has been set up as an anticipatory controlled delivery situation into a probable cause? Does it mean that probable cause is sort of omnipresent all the time and if you've got it, it's okay? No. No, no, no. What you have here, it seems to me, is without knowing, knowing that a package, a very suspicious package, a package a drug dog had alerted to was on its way to this address. In fact, I think you used the phrase, you've got a suspicious package going to suspicious people. When that's the fact, you don't have to wait to open that package, given his prior history and given all of the indices that this might contain drugs. Well, can you sever the fact that the way the government presented this to the judge in order for the judge to act on issuing the warrant, that it was presented as the fact that we are going to make a controlled delivery? Can you sever that and say, we're not going to look at that because it's deficient under Ninth Circuit law, so we're going to look at the fact of whether underneath that there really is probable cause that we don't worry. We know that we're going to deliver the package, but we're not going to worry about that delivery. We want to go in. Isn't it the fact that you wouldn't go in to do the search unless you made the controlled delivery? In other words, you wouldn't have gone to the judge one day and said, you know, I think there's a package somewhere and it might be going to the house, it might get there, it might not. I want to go look. You know the package is going there because you stopped it. You know the package is going there and it contains drugs because you opened it. And you told the judge, we're going to make a controlled delivery. So how do you sever all that stuff out? Well, I think in the first instance it's important to realize that there was no request for an anticipatory warrant and no anticipatory warrant. I understand all that. All right. But I just want to make that clear at the beginning. Okay. You can't unwind the factual basis of this case if we look at the totality of the circumstances in trying to find this probable cause. You wouldn't be here unless you stopped the package and opened it and looked inside. You wouldn't be here unless you said, now we're going to control delivery. Because if you would have delivered it and not asked for the warrant, it would have been over. You could have said, oh, that was a good exercise, forget about it. But you said, no, we're not only going to know it's there, but we're going to make a controlled delivery and then we're going to go in and arrest and do a search. So I'm wondering how you can sever that. Well, I think what it comes down to is this, is that I think you have to say that if you take the controlled delivery away, there's still probable cause because you know the package is en route. The package doesn't have to get there. What's important is that it is a suspicious package. Other packages, the same kind of, we don't know what was in those other packages. We don't know that. I don't know what was in other packages, right? That's true. What went to the judge or magistrate. Again. All we know is a suspicious package is en route to this house. A suspicious person in the house. And we know that other packages have gone to the same address. A suspicious address. It's sort of like a. . . So if you have one suspicious package and then two packages, and now the address is suspicious because one suspicious package is going there, you bootstrap the other two packages. Again, we're not. . . We don't know what was in those packages. I understand we don't know what was in those packages. They might have been L.L. Bean. It could have been. It could have been other sweaters without marijuana. Right. But that's true. The fact is, though, is that it becomes more likely. It increases the likelihood. It doesn't. You know, I think we're dealing in two different realms here. The question of is it a fair probability. There's some probability. Yeah, exactly. Is it a fair probability? Well, I think it's a fair probability. I think. . . It doesn't mean more likely than not, but it's hard to find cases that don't suggest it means something pretty substantial, you know, a 40 percent chance. I don't know. But not like a 2 percent chance. That's another magic word. A substantial basis for the magistrate to make a finding. No. I mean, is your argument sort of like in response to Judge Brunetti's question, sort of like you had a belt in suspenders? The belt was you have independent probable cause apart from the controlled buy. You're also planning to do a controlled buy, but maybe you screwed up the controlled buy, but there's still enough independently apart from that? That's not just my opinion. That's what the district court found. Well, I understand. I didn't make it up, you know. I mean, it does go back, though, to, you know, what's on the plate in front of the magistrate when you say, well, he had the basis to make these findings. Yes. But he made those findings predicated on the representation on the controlled buy. So it's like you've taken away one of his building blocks, in effect, in terms of his foundation for making his findings. So what Judge Brunetti, I think, was working towards and what he's asking, as I hear it, is, well, how do we credit those findings when, in fact, he's told something that we don't have the foundation for? Do we just put that all aside and say, de novo, I wonder if there's probable cause? Well, no. I think you've got it. Your review should be somewhat deferential. And you've got the state court judge in the first instance finding probable cause on the basis of all the factors we've been discussing for the past 15 minutes. Including some that didn't occur. And then you have a Federal district judge reviewing the same set of facts and the same documents with the same averments about suspicion of people and the package and the dog's alert. And that judge finds probable cause to exist before the anticipatory warrant comes  You are making a great argument. But the case, I have to say, unfortunately, for the government side reminds me of the story of Humpty Dumpty, sort of, you know. I just don't see how you can sustain the probable cause without the evidence of the drugs being in the package in the first instance. And maybe you can't unscramble that the whole thing is set up. Well, I think the important thing is that there was a strong. This wasn't just a guess that maybe there were drugs in this package. When the dog alerts, that's enough to search a package. That's enough to search a car. Is that enough to search a house? Let's take everything else out of the case. If you had a package addressed to some persons at home, you don't know anything about them, but the package is suspicious. Same package as here. It's got this funny, you know, addressing. And also a dog alerts to it. You take it to a dog and a dog alerts. Is that enough to get a search warrant for their home without more? I don't know. I'm reluctant to say yes. Because that's not, that hypothetical is not our case. In addition to that, you've got that someone in the house had some drug convictions. And had some arrests, which I don't think we can consider arrests. Well, I don't know. Can we consider arrests without knowing that they led to convictions? Well, if we can't. This is not the sentencing guidelines and you're not worried about, you know,  I mean, again, you're moving in a realm of probabilities, not certainties, Your Honor. That's a fair argument. I know time is running out, but I've got to run this by you. Sure. If you go through the warrant and accept your argument up to the paragraph with regard to the controlled delivery, and if you treat the controlled delivery paragraph as an assertion that the package was alerted, stopped, alerted, and there's probable, reasonable probability that there are drugs in the package, and that all the controlled delivery paragraph says not only did we stop it, but the chain of control was that we opened it. They didn't say that. But it's going to be delivered, and therefore it's going to go to the house. You wouldn't go to the house that was going to be delivered to the U.S. Post Office or to the courthouse. So if the paragraph can be treated as it's going to be delivered to the house, therefore I want to search that house, would that solve the problem with regard to the anticipatory language in that last paragraph? In other words, the chain is complete when they say we stopped it in Tucson or wherever it was, we had a dog alert, we forwarded it, and we're going to deliver it to this address. That just shows the chain of where it's going. Well, yeah, you anticipate that it's going to get there. But would that be an alternative to treating this as an anticipatory? The judge didn't say that, right? I think so, because it wasn't conditioned. I mean, you know it's heading in that direction, and you expect that if a person Mr. Robinson, the person who's waiting for it has these things. The magistrate that got the State Affidavit, he didn't know what was going to happen with the package because all he knows it was stopped and alerted. That's right. The last paragraph said it's going to be delivered. Yes. And so the judge now knows that you're asking to go into the house where the package is being delivered. That's right. Interesting. Well, my time's up. I assume you don't want to hear about sufficiency and void for vagueness. Those we can figure out easily. I think you've both addressed the issue that's troubling on both sides. So thank you very much. Thank you very much. I appreciate it. Do you have some rebuttal time? I have just several points that I would like to make. First of all, Your Honor, with regard to arrests, I believe that I addressed that somewhat in my reply brief. It's my position that arrests are an insufficient basis, but I did find a split in terms of the authority on that. And I point out here that those arrests are outdated arrests as well, occurring, as I said, in the early 80s and on to the 90s. Another important point to remember is that dogs can alert on simply smells of illegal drugs, as opposed to the actual presence of the drug, and that, I think, needs to be pointed out in the context of the arguments that are made with regard to this. Although there might be a fair probability in terms of if a dog alert that there would be a fair probability of drugs or at least some substantial basis to think there were drugs, correct? Well, I don't buy that, frankly, Your Honor, knowing that there are some pretty significant problems sometimes with dog sniffs and whatnot. I mean, there can be false alerts. That's correct. You know, U.S. currency is one of the classic examples that's given. Correct. Your position is suspicious package plus dog alert doesn't give a fair probability of finding criminal stuff inside the house. It certainly doesn't. Plus your position is the way it was set up, they had to do it. It was an anticipatory warrant. Yes. So we look at those rules. Yes. You just don't have the nexus to the home. Remember that Hubert Robinson, Jr., their minor son, lived there, too. The packages all said, the two prior ones, the Robinson. And there's nothing in that warrant or warrant application that said that the man with the drug conviction and the arrest actually resided there. And so, Your Honor, if you want to buy the argument that due to Mr. Detective Evans' criminal law experience, people who use drugs are going to have them at their house, in fact, you know, there's evidence from drug experts to the contrary, that they're not so naive as to keep their stash at their home. It's in their truck or it's at a friend's house or some other place like that or they go to a crack house, frankly. The government just, in summary, I would say, cannot have it both ways. They know it's a bad warrant, so they're trying to retool it. Please do not do that. I think that defeats Fourth Amendment purposes to then carve out that last paragraph and say, oh, we're going to ignore it now. That's judicial redoing, retooling of that warrant that is contrary to all of our Fourth Amendment jurisprudence. And what we know about fair notice on the spot to the people who are not only executing the warrant, but to the people who are the subject of the search. And, of course, my last comment is that Groh v. Ramirez from the United States Supreme Court, which I think does undermine Vesicuro, but I don't think that it directly applies to this situation here, tells us that notice to those individuals is paramount in terms of being a purpose of the Fourth Amendment and the particularity requirements, which does figure in, of course, to how we view the validity or invalidity of any anticipatory warrant. Thank you. Thank you. The case of the United States v. Robinson is submitted. The next case for argument is Luquin v. Ashcroft. We're going to take a short break. If you can get set up for the next case, please. All rise. I'm going to put Sam to recess. Got me on guard here. I was sleeping. Thank you. That's not quite the one that makes me—I mean, it is about— This is not the one. Okay. We'll get her again.
judges: Brunetti, McKeown, Gould